SUDENGA INDUSTRIES, INC., Plaintiff,

v.

FULTON PERFORMANCE PRODUCTS, INC., Defendant.

No. C 93–4054.

United States District Court,
N.D. Iowa,
Western Division.

July 17, 1995.

Daniel E. Dekoter, Dale S. Honken, Cocoran Skiver Zito Dekoter & Thale PLC, Sibley, IA, for plaintiff.

Margaret M. Prahl, Eidsmoe Heidman Redmond Fredregill, Sioux City, IA, Jeffrey B. Shapiro, Miami, FL, for defendant.

## ORDER

JARVEY, United States Magistrate Judge.

This matter comes before the court pursuant to defendant Fulton Performance Products' April 17, 1995, motion for partial summary judgment. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636. The court held oral argument on the motion for summary judgment on July 12, 1995, at which the plaintiff was represented by Daniel DeKoter. The defendant was represented by Margaret Prahl. The defendant's motion for summary judgment is granted.

This is a products liability case arising out of the sale of allegedly defective winches from defendant Fulton to plaintiff Sudenga. Sudenga incorporated the winches into augers used in agricultural settings. The case involves winches purchased by approximately 34 separate purchase orders between 1984 and 1993. Plaintiff sues for purely economic losses on theories of negligence, breach of express and implied warranties, breach of contract, strict liability, and fraud. At oral argument, plaintiff conceded that its only remaining viable claims are for breach of express and implied warranties.

A typical transaction between these parties would begin with the placement of an order by Sudenga to Fulton over the telephone. Sudenga would then issue a purchase order which often specifically stated that it confirmed an earlier telephone order. Fulton would then ship the goods to Sudenga and would issue an invoice and send it to Sudenga. Sometimes, the invoice would arrive at Sudenga before the shipment of goods.

■ The primary dispute at issue in the motion for partial summary judgment concerns terms contained within the Fulton invoice. On the back of the invoice, there are a number of contractual terms. Paragraph 11 provides as follows:

11. Buyer agrees that an action for breach hereunder shall be commenced within one (1) year. In no event shall any claim for special or consequential damages be made by either party.

The invoice also provides that:

16. Payment of this invoice or acceptance of delivery of the goods herein specified constitutes acceptance of the foregoing terms and conditions.

Because this is a contract for the sale of goods, the parties agree that the matter is governed by the Uniform Commercial Code.

The parties agree that they had a contract. They disagree about the terms of that contract. Plaintiff contends that the term limiting the statute of limitations to one year for breach of warranties found within the Fulton invoice is ineffective because its purchase order was a complete expression of its offer and Fulton's shipment of the goods was an unqualified acceptance of that offer. Pursuant to *Code of Iowa* 554.2206(1)(b):

An order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt

or current shipment of conforming or non-conforming goods....

The defendant contends that while a contract was formed pursuant to 554.2206, the terms of that contract are supplied, in part, by § 554.2207 which provides:

1.   A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

2.   The additional terms are to be construed as proposals for addition to the contract.   Between merchants such terms become part of the contract unless:

   a.   the offer expressly limits the acceptance to the terms of the offer;

   b.   they materially alter it;   or

   c.   notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

Thus, in its motion for partial summary judgment, the defendant contends that the invoice is either an expression of acceptance or a written confirmation within the meaning of § 554.2207.   At oral argument, the defendant only argued that the invoice acted as a written confirmation.[1]

The purchase order and invoice used by the parties herein appear on their face to be a garden variety of such documents used in American business.   The purchase order clearly states that it is a purchase order made by the plaintiff to the defendant.   The quantity, model number, and description of goods ordered is listed.   The shipper and the party to pay for shipment (F.O.B.) is listed. On some purchase orders, the payment terms are identified.   Often there is a notation about the urgency for shipment.

The Fulton invoice also describes the quantity, model number, product description, purchase order, payment terms, and price. Thus, the question largely dispositive of the defendant's motion for summary judgment is whether the invoice qualifies as a "written confirmation" within the meaning of § 554.2207.   The court finds that it does.

There is no other document issued by Fulton that confirms all of the information contained in the earlier telephone agreement and purchase order.   While the invoice was issued as a result of shipment and therefore was always done after the goods were shipped, the documents show that shipment and invoicing were done relatively contemporaneously.   As noted above, the invoices sometimes reached Sudenga before the goods.

To determine whether Fultons' invoice qualifies as a written confirmation, the court finds the case of *Mid–South Packers, Inc. v. Shoney's, Inc.*, 761 F.2d 1117 (5th Cir.1985), to be instructive.   In *Mid–South Packers*, the court found under similar circumstances that invoices containing new and additional terms concerning attorney fees were applicable to a series of agreements for the purchase of shipments of bacon and ham.   Specifically, the court noted that because the contract was initially made orally, the invoice was a writing that made the contract enforceable as against a statute of frauds argument.   Second, the parties' course of dealing clearly indicated to Shoney's that invoices would follow Shoney's purchase orders and the additional terms concerning interest and attorney fees came to no surprise to Shoney's as the provisions had been consistently placed in prior invoices.[2]   The court then

---

1.   In their briefs, the parties have argued at some length as to whether the reduction in the statute of limitations found within paragraph 11 of the Fulton invoice "materially altered" the contract. The plaintiff now concedes that it cannot advance such an argument in light of *Shur–Value Stamps, Inc. v. Phillips Petroleum Co.*, 50 F.3d 592 (8th Cir.1995).   *Shur–Value Stamps* is directly on point and establishes as a matter of law that such a provision limiting the statute of limitations does not materially alter the contract.

2.   Uniform Commercial Code § 2–207 has little to do with whether a merchant reads another merchant's forms.   Given the typical situation where neither merchant reads the other's forms, this section simply provides a predictable way to determine the terms of a contract where the parties agree that a contract exists but disagree on terms that were not negotiated.   Thus, if the court in *Mid–South Packers* is saying that because the terms were consistent from invoice to invoice and therefore could have and should have been

noted that the invoices supplied terms that were not contained in the purchase agreement and therefore added some presumably desirable measure of precision to the contract. Finally, Shoney's had the right and the opportunity to prevent these terms from becoming a part of the contract by timely rejecting them. While noting limited authority to the contrary, the court held that under the circumstances presented, the invoices were written confirmations within the meaning of UCC § 2–207 and the additional terms in the invoices were enforced.[3]

The same reasoning applies to the matter now before the court. Fulton's invoices were issued relatively contemporaneously with the shipment of goods, they provided an enforceable obligation against Fulton in the face of a statute of frauds argument, the parties' dealings involved identical invoice provisions throughout the parties' relationship, a few additional terms are found in the invoices that are not in the purchase orders, and Sudenga never exercised any opportunity to delete these additional terms despite paragraph 16 of the invoice which purported to require it to do so.

Iowa law permits parties to reduce by agreement the statute of limitations in contracts for the sale of goods to not less than one year. Code of Iowa § 554.2725(1). Because this is permissible generally, and because such a provision contained in Fulton's invoice became a term of each of the contracts at issue between the parties herein pursuant to § 554.2207, the court finds that a one-year statute of limitations is applicable to the breach of warranty claims made by the plaintiff. The plaintiff argues, however, that this statute of limitations period should be tolled pursuant to the so-called discovery rule as the allegedly defective nature of the

winches in question was not determined within one year from the date of sale.

■ The discovery rule as it applies to actions for the sale of goods is found in Code of Iowa § 554.2725(2):

2. A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a **warranty explicitly extends to future performance** of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Accordingly, if an express warranty does not "explicitly" extend to future performance, there is no tolling under the discovery rule.

■ As it is used in Code of Iowa § 554.2725, the word "explicit" means a full clear expression being without vagueness or ambiguity; leaving nothing implied. *City of Carlisle v. Fetzer,* 381 N.W.2d 627, 629 (Iowa 1976). Synonyms for the word explicit include express, definite, and specific. *Id. See also Murphy v. Spelts–Schultz Lumber Co.,* 240 Neb. 275, 481 N.W.2d 422, 430 (Neb. 1992).

■ The purpose of UCC § 2–725 is to provide a finite period of time when the seller knows that it is relieved from liability for a possible breach of contract for sale or breach of warranty. *City of Cincinnati, Ohio v. Dorr–Oliver,* 659 F.Supp. 259 (D.Conn.1986). Because all warranties in a broad and undefined sense extend into the future, courts will not infer, from language of warranties, terms of continuous performance which are not clearly and expressly stated. If there is any ambiguity it must be inter-

---

read at some point throughout the relationship, then the court understands and agrees with this reasoning.

**3.** It appears that courts have quite consistently found that invoices sent contemporaneously with goods can qualify as written confirmations under UCC § 2–207. *See,* i.e., *Permian Petroleum Company v. Petroleos Mexicanos,* 934 F.2d 635, 654 (5th Cir.1991); *Advance Concrete Forms v. McCann Construction,* 916 F.2d 412, 415 (7th

Cir.1990); *Transamerica Oil Corp. v. Lynes, Inc.,* 723 F.2d 758, 765 (10th Cir.1983); *Offen v. Rocky Mountain Constructors,* 765 P.2d 600 (Co. Ct.App.1988); *Cox Engineering v. Funston Machine & Supply Co.,* 749 S.W.2d 508 (Tx.Ct.App. 1988); *Bicknell v. Joyce Sportswear,* 173 Ga.App. 897, 328 S.E.2d 564 (1985); *Album Graphics v. Beatrice Foods,* 87 Ill.App.3d 338, 42 Ill.Dec. 332, 408 N.E.2d 1041 (1980); *Herzog Oil Field Service v. Otto Torpedo Co.,* 391 Pa.Super. 133, 570 A.2d 549 (1990).

preted against the existence of such a warranty. *Roy v. Armco,* 636 F.Supp. 839 (E.D.Tx.1986).

 The ordinary rule is that the statute of limitations in a breach of warranty action begins to run once the seller tenders the goods. *City of Cincinnati v. Dorr–Oliver, supra.* In order to take the case out of the general rule, the express warranty must explicitly extend to future performance. The terms of the warranty must unambiguously and explicitly indicate that the manufacturer is warranting the future performance of the goods for a *specified period of time. In re Lone Star Industries, Inc.,* 776 F.Supp. 206, 219 (D.Md.1991).

 Because a buyer of goods must produce evidence of a specific time or date concerning future performance in order to trigger the discovery exception noted above, the buyer's unilateral expectation of how the product will perform is insufficient to establish such a warranty. Instead, the buyer must show an agreement between the parties regarding the future performance of the product. *Economy Housing Co. v. Continental Forest Products,* 805 F.2d 319 (8th Cir.1986). In *Economy Housing,* the Eighth Circuit Court of Appeals found that Nebraska law requires a buyer who was relying on the discovery exception of UCC § 2–725 to prove the existence of a warranty with an explicit reference to a future time period during which the seller warrants the product. The court there noted the "overwhelming weight of authority" which requires a buyer to prove that its seller specifically warranted the product for a defined period of time in the future. *Id.* at 321. *See also R.W. Murray Co. v. Shatterproof Glass Corp,* 697 F.2d 818, 823 (8th Cir.1983) (construing Missouri law), and *Binkley Company v. TeleDyne Mid–America Corp,* 460 F.2d 276, 277 (8th Cir.1972) (again construing Missouri law).

The court has examined plaintiff's allegations concerning the alleged express warranties created by the defendant. None of them comes close to specifying a particular date or duration of the warranty such that it quali-

fies for the exception found in § 554.2725(2). Accordingly, the one-year statute of limitations for any warranty claims made herein commenced upon delivery of the goods.

Upon the foregoing,

IT IS ORDERED

1. That defendant Fulton Performance Industries' April 17, 1995, motion for partial[4] summary judgment is granted.

2. A telephonic status conference is set in this matter for 8:30 a.m. on August 10, 1995. The call will originate from the undersigned's chambers, United States District Courthouse, Cedar Rapids, Iowa.

---

4. Although styled as a motion for partial summary judgment, it may be dispositive of the entire case. Defendant contends that it is. Plaintiff wants an opportunity to review the invoices to determine if any claims remain within the one-year statute of limitations.